IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRIDE HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 19 C 659 |
| | ) | |
| KIRSTJEN NIELSON, Secretary, | ) | Judge John Z. Lee |
| U.S. Department of Homeland Security, | ) | |
| L. FRANCIS CISSNA, Director, | ) | |
| United States Citizenship and | ) | |
| Immigration Services, MATTHEW G. | ) | |
| WHITAKER, Acting Attorney General, | ) | |
| and THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pride Holdings LLC ("Pride") seeks review of the decision by United States Citizenship and Naturalization Services ("USCIS") to deny Pride's request for a preference visa for its Chief Executive Officer, Aboobacker Puthankote Vadakeveetil. Invoking the Administrative Procedure Act ("APA"), Pride urges the Court to set aside the Agency's decision as arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). The parties have submitted cross-motions for summary judgment [12][13]. For the reasons below, the Defendants' motion is granted, and Pride's motion is denied.

# Background[1]

## I. The Visa Framework

Under some circumstances, an executive or manager employed by a multinational firm may qualify for a preference visa. *See* 8 U.S.C. § 1153; 8 C.F.R. § 204.5(j). To secure such a visa, a firm must show that its employee: (1) has worked "for at least 1 year [at the] firm" and (2) will "continue to render services . . . in a capacity that is managerial or executive." 8 U.S.C. § 1153.

The relevant regulations define "executive capacity" as "an assignment within an organization in which the employee primarily" engages in four types of activities:

    (A)  Directs the management of the organization or a major component or function of the organization;
    (B)  Establishes the goals and policies of the organization, component, or function;
    (C)  Exercises wide latitude in discretionary decisionmaking; and
    (D)  Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 C.F.R. § 204.5(j)(2).

## II. Pride's I-140 Petition

Pride Financial Dubai ("Pride Dubai") is a diversified holding company based in the United Arab Emirates. *See* R. at 123–34. For years, Vadakeveetil served as that firm's Managing Director. *Id.* Hoping to win clients in the United States, Pride Dubai dispatched Vadakeveetil to Schaumburg, Illinois to act as CEO of its U.S. subsidiary, Pride Holdings. *Id.*

---

[1] Unless otherwise noted, this factual summary draws on the administrative record. *See generally* R., ECF No. 10.

A few months after Vadakeveetil set up shop in Schaumburg, Pride filed an I-140 ("Immigrant Visa for Alien Workers") form with the USCIS. *Id.* at 361–66. In that petition, Pride asserted that Vadakeveetil had acted as an executive when he was employed in Dubai and that he would continue to do so in the United States. *Id.* For those reasons, Pride requested that the Agency grant Vadakeveetil a preference visa. *Id.* at 378–79.

Upon initial review, the Agency wrote Pride a letter informing it that "additional evidence [was] needed" because it "c[ould not] determine if the beneficiary ha[d] met" the statutory requirements. *Id.* at 113. In that Request for Evidence ("RFE"), the Agency directed Pride to supply a letter describing Vadakeveetil's "specific daily tasks," along with an organization chart, tax forms, and other documents. *Id.* at 111–16. Pride promptly provided the requested records. *Id.* at 118–22.

### III. The Agency's Decision

After reviewing the supplemental documentation, the Agency rejected Pride's I-140 petition on March 20, 2018. *Id.* at 1–10. "[D]ue to the broad and vague list of job duties [submitted]," the Agency explained, "[it] is unclear how much time the beneficiary spent in each duty or task." *Id.* at 5. Pride's "organization chart indicate[s] that the beneficiary will have eleven direct subordinates," the Agency added, "and provide[s] broad and vague titles for these un-named, yet to be hired, subordinates." *Id.* "It appears that the beneficiary [will] spend[ ] much of his time

3

performing non-qualifying duties to hire and train subordinates," the Agency concluded, "and does not intend to primarily perform in a managerial capacity." *Id.*

Believing the denial to be improper, Pride lodged multiple administrative appeals and a motion to reconsider. *Id.* at 11–110. But the Agency rebuffed those requests. *Id.* Pride then filed this lawsuit seeking review of the Agency's decision under the APA. *See* Compl., ECF No. 1.

## **Legal Standard**

Under the APA, a reviewing court must set aside an agency decision that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). "A determination is arbitrary and capricious if it runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Orchard Hill Bldg. Co. v. U.S. Army Corps of Eng'rs*, 893 F.3d 1017, 1024 (7th Cir. 2018).

Generally, "the scope of review is narrow and a court must not substitute its judgment for that of the agency." *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012). Still, a "reviewing court should not attempt itself to make up for . . . deficiencies" in an agency's reasoning, or "supply a reasoned basis for the agency's action that the agency itself has not given." *Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 668 (7th Cir. 2016) (citation and quotation marks omitted).

Courts use summary judgment "as a mechanism for deciding, as a matter of law, whether the agency action passes muster under the APA." *GB Int'l v. Crandall*, 403 F. Supp. 3d 927, 931 (W.D. Wash. 2019); *see Little Co. of Mary Hosp. v. Sebelius*,

587 F.3d 849, 853 (7th Cir. 2009). Review is based solely on the record in the administrative proceeding below, and the court does not take or consider new evidence. *See Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994).

## Analysis

The Immigration and Naturalization Act ("INA") provides that an employee who serves "in a managerial or executive capacity" may qualify for a preference visa. 8 U.S.C. § 1153(b)(1)(C). To secure such a visa, a firm must submit a petition showing that an employee "primarily" engaged in managerial or executive activities in his prior position and will continue to do so in the United States. 8 C.F.R. § 204.5(j). The employer bears the burden of establishing that its employee satisfies this requirement. *Kong Hong USA Inc. v. Chertoff*, No. C-06-00804EDL, 2006 WL 3068876, at *1 (N.D. Cal. Oct. 27, 2006) (citing 8 U.S.C. § 1361)).

Here, the Agency denied Pride's petition because it concluded that the "broad and vague list of [the beneficiary]'s job duties" obscured whether he "will be or has been employed in a primarily executive capacity."[2] R. at 9. It is well-established that "general descriptions of business-related tasks . . . do not demonstrate that a beneficiary's proposed duties are primarily managerial or executive." *Khamisani v. Holder*, No. CIV.A. H–10–0728, 2011 WL 1232906, at *7 (S.D. Tex. Mar. 31, 2011).

---

[2] The record also reveals that "an I-140 [form] was previously filed on the beneficiary's behalf and was denied in 2003 due to the prior petitioner's inability to respond sufficiently to a request for evidence." Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mot.") at 4 n.2, ECF No. 12 (citing R. at 367). Pride "strongly objects" to any consideration of this evidence as "completely irrelevant to the matter at hand." Pl.'s Reply at 5, ECF No. 16. Because there is no indication that the Agency relied on the 2003 denial when reaching its decision, neither will the Court.

5

At a minimum, a petitioner must describe "how, when, where, and with whom [the employee's] duties occurred." *Fedin Bros. Co. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989). Without those details, a firm cannot "prove that the [beneficiary's] duties [are] mostly managerial or executive." *Shine's Ranch Corp. v. Ridge*, No. CA3:04–CV–2371–R, 2005 WL 1923595, at *3 (N.D. Tex. Aug. 10, 2005).

In urging the Court to set aside the Agency's decision, Pride's primary argument is that the job descriptions it submitted "are specific and demonstrate executive capacity."[3] Pl.'s Mot. at 10. In support, Pride highlights the twenty-nine bullet points it elaborated to describe Vadakeveetil's previous position at Pride Dubai. *Id*. Representative examples include:

- "Developed a strategic plan to advance PRIDE FINANCIAL'S mission and objectives and to promote revenue, profitability, and growth as an organization." R. at 174.

- "Established and maintained risk control procedures for the commodity exchange business and platform development which meet internationally recognized standards." *Id*.

- "Periodically evaluated outsourcing arrangements of some of the operations of the software division of PRIDE FINANCIAL." *Id*. at 175.

- "Promoted a culture that reflects the organization's values, encourages good performance, and rewards productivity." *Id*.

---

[3] In its briefing, Pride argues that Vadakeveetil acted and will act as an executive, not a manager. *See, e.g.*, Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mot.") at 8, ECF No. 12-2.

The bullet points listing Vadakeveetil's current duties follow a similar pattern. *See id.* at 128–29.

But such inexact descriptions generally are insufficient to establish that an employee acts in an executive capacity. *See, e.g.*, *Kong Hong*, 2006 WL 3068876, at *3 (finding that descriptions such as "formulat[ing] strategic plans and goals" and "streamlin[ing] petitioner's focus on wholesale distribution of the overseas company's herbal products" were not enough to satisfy the executive or managerial capacity requirement); *Tsiva, Inc. v. Attorney Gen., Dep't of Justice*, No. 3:12-CV-631-J-34PDB, 2014 WL 6675607, at *8 (M.D. Fla. Nov. 24, 2014) (descriptions such as "directs, manages, and trains the first-line managers/supervisors" not sufficient); *Saga Overseas, LLC v. Johnson*, 200 F. Supp. 3d 1341, 1348 (S.D. Fla. 2016) (descriptions such as "supervising employees at the end of the day" and "planning special activities" not sufficient); *Grinin v. Johnson*, 224 F. Supp. 3d 525, 533 (S.D. Tex. 2016) (descriptions such as "[p]repar[ing] and send[ing] weekly [report] to the Board of Directors in Russia" not sufficient). Although Defendants have called attention to this line of cases, Pride has failed to distinguish or even acknowledge it. *See* Defs.' Mot. at 12 (citing *Saga*, 200 F. Supp. 3d at 1348).

Furthermore, contrary to Pride's suggestion, its list of bullet points does not necessarily include only those tasks that an executive would perform. In fact, "many of the descriptions are sufficiently vague that a person performing the described tasks could be a [middle or lower level] manager," who would not qualify for a preference visa. *Tianhai Elec. N. Am., Inc. v. Johnson*, No. 14-CV-10016, 2015 WL 12731911, at

7

*4 (E.D. Mich. Dec. 8, 2015). For example, "evaluat[ing] outsourcing arrangements" could fall within the purview of a junior analyst, rather than an executive. R. at 175. Likewise, "maintain[ing] risk control procedures" might be the responsibility of a mid-level employee, not an executive, depending on what those procedures entail. *Id.* at 174. And, the very fact that we do not know what exactly Pride means by "risk control procedures" only illustrates the insufficiency of its descriptions.

Nor does Vadakeveetil's place in Pride Dubai's organizational structure show that he acted in an executive capacity. Pride does point out that Vadakeveetil served as Manager Director of its parent company, which employed over 1,000 people in 2016. *See* R. at 170–71; *In re G-Inc.*, Adopted Decision, 2017-05, 2017 WL 5267470, at *4 (AAO Nov. 8, 2017) (considering firm size when deciding whether a petitioner has met its burden). But an impressive title alone does not confer executive status. *See, e.g.*, *Kong Hong*, 2006 WL 3068876, at *2 (rejecting a petition on behalf of a company's president); *Fedin Bros.*, 724 F. Supp. at 1105 (same). And Agency regulations provide that "[a]n individual shall not be considered to be acting in a managerial or executive capacity merely on the basis of the number of employees that the individual . . . directs or has directed." 8 C.F.R. § 204.5(j)(4)(ii). The upshot is that neither Vadakeveetil's title nor Pride Dubai's size are enough to establish conclusively that he served in an executive capacity at Pride.

Of course, it is quite possible that, as Pride's CEO, Vedakeveetil may well have acted in an executive capacity. Had Pride expounded upon the clients Vedakveteetil maintained, the strategic decisions he made, and the budget dollars he managed, that

8

may have gone a long way towards satisfying the INA's criteria. As it stands, however, the administrative record is devoid of those details. Indeed, even after reviewing the task descriptions provided by Pride, the Court "still does not know what [the beneficiary]'s job actually entails." *Tianhai*, 2015 WL 12731911, at *4. And, while Pride filed many other documents, few supply specifics about Vadakeveetil's duties. As a result, the Court cannot conclude that the agency's decision "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Orchard Hill*, 893 F.3d at 1024.

Although Pride advances three other arguments for setting aside the Agency's decision, none carry the day. First, Pride questions "whether USCIS reviewed the documents [submitted] in response to the RFE."[4] Pl.'s Mot. at 4. For example, Pride posits that the Agency "ignore[d] the 29 distinct tasks given to explain the executive role the Beneficiary [Vadakeveetil] plays." *Id.* at 13. This is incorrect. In fact, the Agency quoted all twenty-nine task descriptions. *See* R. at 6–9. And, although the agency does not discuss every document Pride filed, it analyzes those that are most likely to shed light on Vadakeveetil's duties, such as the job descriptions and organization charts. *Id.*

---

[4] Relatedly, Pride makes much of the Agency's observation that the beneficiary filed a letter on his own behalf, rather than having someone else at the company respond to the RFE. *See* Pl.'s Reply at 2, ECF No. 16. But nothing in the Agency's decision turns on that observation. Notably, the Agency never stated that it would ignore or discount Pride's documentation on that basis. *See* R. at 1–10.

9

Second, Pride contends that CEOs should be given leeway to submit vague descriptions because of the "high-level, big picture" nature of their duties. Pl.'s Reply at 4. "USCIS must look at the job descriptions from the perspective of the real world," Pride argues, "where executives do not punch time clocks and keep track of every minute of the day." Pl.'s Mot. at 14. Maybe so, but the Agency's decision does not call for CEOs to punch a clock. Rather, it simply asks firms to supply a detailed description of their CEOs' responsibilities. The Agency did not clearly err when it concluded that Pride's failure to do so raised questions about whether Vadakeveetil's role is as high-level as his employer claims. *See Fedin Bros.*, 724 F. Supp. at 1108 (requiring a petitioner to disclose "how, when, where, and with whom [the executive's] duties occurred").

Third, Pride challenges the Agency's interpretation of Pride's organization chart. *See* R. at 234. That chart depicts eleven future employees—such as help-desk staff members—who will report directly to Vadakeveetil. *Id.* Citing the chart, the Agency predicted that "the beneficiary [will] spend[ ] much of his time performing non-qualifying duties to hire and train subordinates." *Id.* at 5. Pride counters that the job description it submitted called for the CEO to "oversee this expansion of the company, but did not say that he would directly be the person supervising non-professional employees." Pl.'s Reply at 4. That may be true, but it was not unreasonable for the Agency to infer from Vadakeveetil's position in the chart that he will be responsible for training relatively low-level employees. That cuts against Pride's assertion that he will act in an executive capacity. *See* 8 C.F.R. § 204.5(j)(4)(i)

("A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of his or her supervisory duties unless the supervised employees are professional.").

In sum, Pride has failed to demonstrate by a preponderance of the evidence that the Agency's decision to deny its visa petition was arbitrary and capricious.

## **Conclusion**

For the reasons given above, the Defendants' motion for summary judgment [13] is granted and Pride's competing motion [12] is denied. This case is terminated.

**IT IS SO ORDERED.**　　　　ENTER:  2/20/20

　　　　　　　　　　　　　　　　　*/s/ John Z. Lee*
　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　**John Z. Lee**
　　　　　　　　　　　　　　　　　**United States District Judge**